UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

THOMAS E. PEREZ, Secretary of Labor, )
United States Department of Labor, )
   )
  Plaintiff,  )
   )
 v.   )  CIVIL NO.  2:15cv176
   )
FIVE M'S, an Indiana limited liability )
company d/b/a PREMIER AUTO, PREMIER )
AUTO SALES, and VALPARAISO CAR )
CARE AND TRANSMISSION, R-WAY, INC.,)
an Indiana corporation d/b/a L&W AUTO )
SALVAGE, and JOHN MORGAVAN, an )
individual,  )
   )
  Defendants. )

## OPINION AND ORDER

This matter is before the court on a motion for summary judgment filed by the plaintiff,

Thomas E. Perez, Secretary of Labor, United States Department of Labor ("DOL"), on August 1,

2016.  The defendants, Five M's and John Morgavan, filed a response to the motion on

September 1, 2016, to which the DOL replied on September 19, 2016.

Also before the court is a motion to strike portions of the declaration of Nancy Alcantara,

filed by Five M's on September 1, 2016.  The DOL responded to the motion to strike on

September 19, 2016.   Five M's declined to file a reply.

Also before the court is a motion to strike the affidavit of Neal Guidarelli, filed by the

DOL on September 19, 2016. Five M's has not filed a response.

## Summary Judgment

Summary judgment must be granted when "there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine

issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Not every dispute between the parties precludes summary judgment, however, since "[o]nly disputes over facts that might affect the outcome of the suit under the governing law" warrant a trial. Id. To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. Heft v. Moore, 351 F.3d 278, 282 (7th Cir. 2003). A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." Goodman v. Nat'l Sec. Agency, Inc., 621 F.3d 651, 654 (7th Cir. 2010).

Discussion

On May 1, 2015, the DOL filed a complaint against Five M's seeking injunctive relief, restraining minimum wage, overtime, and recordkeeping violations of the FLSA, and recovery of unpaid compensation with an equal amount in liquidated damages under the FLSA. The DOL's lawsuit specifically seeks a total of $28,954.12 for 35 employees in unpaid wages ($1,676.83) and unpaid overtime ($12,800.23) and liquidated damages ($14,477.06).

The DOL alleges that Five M's history of FLSA violations dates back to 2005, when the DOL's Wage and Hour Division ("Wage and Hour") first conducted an investigation of Valparaiso Transmission and owner John Morgavan. Then, like now, Wage and Hour determined that Mr. Morgavan failed to pay an employee his last paycheck (a minimum wage violation), paid hourly employees who worked more than 40 hours per workweek their regular rates for all hours worked (an overtime violation), and failed to keep records of hours worked (a recordkeeping

violation). More than ten years later, Valparaiso Transmission, Premier Auto Sales, and L & W Auto Salvage (hereinafter, the "three businesses") are still operating under Mr. Morgavan's complete direction and control, and the DOL contends that Mr. Morgavan is still disregarding the obligations he and the three businesses have as employers subject to the FLSA.

The three businesses, which are an auto repair shop (Valparaiso Transmission), a salvage yard (L & W Auto Salvage), and a used car lot (Premier Auto Sales), operate as one vertically integrated enterprise with a common business purpose – buying, selling, and servicing used cars. The three businesses are open to the public. Valparaiso Transmission provides a range of car services to customers, while L & W Auto Salvage buys cars, dismantles junk cars for parts, and sells usable car parts on a walk-in basis directly to customers. However, Valparaiso Transmission and L & W Auto Salvage are also each other's "customers," even though no money changes hands. L & W Auto Salvage supplies car parts to Valparaiso Transmission on an as-needed basis, and it is the first stop when Mr. Morgavan needs cheap parts to fix up used cars to sell at his Premier Auto Sales. Likewise, when used cars for sale at Premier Auto Sales need repairs or detailing, Valparaiso Transmission provides those services. In turn, Valparaiso auto technicians work at L & W Auto Salvage, providing services such as pulling parts.

Wage and Hour's findings in the investigation that resulted in this lawsuit mirror its findings in the 2005 investigation. The only thing that seems to have changed since 2005 is the fact that Mr. Morgavan created a parent company (Five M's) to make filing his taxes easier. The DOL now seeks summary judgment to require Mr. Morgavan and his three businesses to comply with the FLSA.

The DOL first argues that the three business are a covered "enterprise" under the FLSA.

The FLSA defines an "enterprise" as "the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all such activities whether performed in one or more establishments or by one or more corporate or other organizational units . . . ." 29 U.S.C. § 203(r)(1). Thus, there is a three-part test to establish enterprise coverage: (1) related activities; (2) unified operation or common control; and (3) common business purpose. *See Brennan v. Arnheim & Neely, Inc.*, 410 U.S. 512, 518 (1973); 29 C.F.R. § 779.202. Determining whether the three businesses are an "enterprise" is a question of law. *Hicks v. Avery Drei, LLC*, 654 F.3d 739, 747 (7th Cir. 2011) (citations omitted). The FLSA requires employees of "an enterprise engaged in commerce" to be paid the minimum wage and the overtime premium. *See* 29 U.S.C. §§ 206(a), 207(a)(1).

In the present case, Five M's does not dispute that the three businesses are a covered "enterprise" under the FLSA. Additionally, Five M's admitted in an interrogatory answer that Mr. Morgavan is a § 3(d) employer under the FLSA. Accordingly, this court finds that the three businesses are an "enterprise" subject to the FLSA and that Mr. Morgavan is an individual employer pursuant to § 3(d) of the Act.

The DOL next argues that Five M's failed to maintain required records. The FLSA requires employers to maintain records of hours worked each workday and total hours worked each workweek. 29 U.S.C. § 211(c); 29 C.F.R. §§ 516.2(a)(7); 516.6(a)(1). FLSA § 11(c) requires employers to "make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions of employment maintained by him," as prescribed by regulation of the DOL. 29 U.S.C. § 211(c). The United States Supreme Court recognized the importance of accurate recordkeeping in the FLSA enforcement scheme and held that an

employer's failure to maintain accurate records of hours actually worked or kept records that are inaccurate or inadequate shifts the burden of proof concerning back wage liability to the employer. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1945); *see also Wirtz v. Turner*, 330 F.2d 11 (7th Cir. 1964); *U.S. Dep't of Labor v. Cole Enterprises, Inc.*, 62 F.3d 775, 780-81 (6th Cir. 1995).

Thus, for any period in which the employer has failed to maintain accurate records as required by the Act, the DOL's burden of proof as to the extent of any back wage liability is met by showing that work was performed which was not properly compensated and by producing sufficient evidence to show the nature and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer either to come forward with precise evidence of the work performed or to rebut the reasonableness of the inference to be drawn from the DOL's evidence. *Mt. Clemens*, 328 U.S. at 687-88; *see also Turner*, 330 F.2d at 13. The employer must not be allowed to profit from difficulties of proof created by his own misconduct. *Mt. Clemens*, 328 U.S. at 688. Evidence that provides a reasonable basis for inference of a "pattern or practice" concerning the actual hours worked is sufficient for approximation of a remedy that includes non-testifying employees. *Martin v. Tony & Susan Alamo Foundation*, 952 F. 2d 1050, 1052 (8th Cir. 1992).

Five M's admit that they maintained time cards for an unknown time after the hours were reported to the payroll company, "[a]nd then after a while, [Five M's] would probably dispose of them." (Guidarelli Aff. ¶ 34). Mr. Guidarelli, the manager in charge of payroll for all three businesses, told Wage and Hour that he believed time cards could be disposed of after calling hours into the payroll company. (*Id*. ¶ 35). Five M's retained "book rate" hours of Valparaiso

Transmission technicians for no more than six weeks. (*Id*. ¶ 36). Five M's admit that there was no policy regarding time sheets that Five M's employees used to record their hours worked (*Id*. ¶ 37), despite being repeatedly told by Wage and Hour that maintaining and preserving records of hours worked for two years are required by the Act.

These basic time records showing hours worked are required to be preserved for two years, and Five M's failed to do so. *See* 29 C.F.R. § 516.6(a)(1). Five M's payroll records (DOL Ex. J) did not accurately reflect the number of hours worked based on Wage and Hour's interviews of 20 employees. Investigator Alcantara used Five M's year-to-date payroll reports (DOL Ex. J at 1-30) to identify employees' hourly rate and Five M's' weekly payroll journals (*Id*. at 31-58) to identify employees' gross pay. (Guidarelli Aff. ¶ 54). Because Five M's did not maintain complete or accurate time records for the investigatory period, the DOL relied on the interviews of twenty employees of Valparaiso Transmission and L & W Auto Salvage and Five M's operating hours to determine the actual hours worked. (*Id*.).

L & W Auto Salvage is open to the public from 8:00 am to 5:00 pm Monday through Friday and from 8:00 am to 4:00 pm on Saturday. (DOL Ex. C 241:19-242:3). Employees typically worked during these operating hours, which equal 47 hours per workweek when a one-hour daily lunch is deducted. Therefore, the DOL used a 47-hour workweek for L & W Auto Salvage employees when calculating back wage amounts due. (*Id*. ¶ 54a). The DOL states that the 47-hour workweek was consistent with employee interview statements.

Valparaiso Transmission is open to the public from 8:00 am to 5:00 pm Monday through Friday and from 8:00 am to 12:00 pm on Saturdays. (DOL Ex. C at 242:10-16). Employees typically worked Monday through Friday from 8:00 am to 5:15 pm; the extra fifteen minutes is a

result of employees parking cars inside Valparaiso Transmission's garage bays at the end of the day. This equals 43.75 hours Monday through Friday when a half-hour daily lunch is deducted. Valparaiso Transmission employees typically worked from 8:00 am to 2:45 pm on Saturdays, which equals 6.25 hours on Saturday. Therefore, the DOL used a 50-hour workweek for Valparaiso Transmission employees when calculating back wage amounts due. The 50-hour workweek was consistent with employee interview statements.

Five M's has not addressed the DOL's argument that it failed to comply with FLSA recordkeeping requirements. Moreover Five M's admits that it had no policy regarding time cards, maintained time cards for an unknown time after the hours were reported to Paycor, and retained "book rate" hours of Valparaiso Transmission technicians for no more than six weeks. In response to the DOL's request for all timesheets, time cards, and other time records for their employees, Five M's produced payroll records for February 2012 through September 2014 and were only able to produce copies of 22 time cards. As the DOL notes, Five M's submitted no evidence that it complies with the FLSA's recordkeeping requirements. Therefore, this court finds as a matter of law that Five M's violated the FLSA's recordkeeping requirements and will enter a recordkeeping injunction against all Defendants.

Next, the DOL argues that Five M's failed to pay at least $7.25 per hour for certain hours worked. The DOL has proffered the declaration of Investigator Nancy Alcantara in support of its assertions.[1] Employers are prohibited from paying employees less than the applicable minimum

---

[1] Five M's has filed a motion to strike portions of the Alcantara Declaration. First, Five M's argues that a sentence in Paragraph 7 of the declaration is an improper legal conclusion. The DOL has withdrawn that sentence and has submitted an Amended Declaration. Five M's further argues that Paragraphs 18 -21 are hearsay. These paragraphs describe the DOL's back wage calculations and include employees' statements about their hours worked and wages received.

wage per hour as defined by the Act. 29 U.S.C. § 206.  The DOL asserts that the current

investigation covering the period from June 30, 2012, through September 20, 2014, revealed

several minimum wage violations. First, Five M's  payroll records reflect that Salaried Parts

Puller James Wilhelm's pay was docked during his last two workweeks (weeks ending October

26, 2013, and November 11, 2013), which brought his pay below the minimum wage rate. Mr.

Wilhelm earned a weekly salary of $420.00, but he was paid only $210.00 and $105.00 during

his last two workweeks. Mr. Wilhelm is due $315.61 in unpaid minimum wage.

Second, on August 16, 2013, Book Rate Technician Thomas Bade was paid by a check

for $111.83 with insufficient funds, resulting in a minimum wage violation because it brought his

pay below the minimum wage rate. Mr. Bade is due a total of $67.72 in unpaid minimum wage.

Five M's recalls an issue with issuing a bounced check to Thomas Bade, but does not know how

it was resolved.

Valparaiso Transmission paid some technicians a weekly salary ("Salaried Technicians");

most technicians were paid using the "book rate" system in which they were paid based on the

amount of time it should take an average mechanic to perform a specific task instead of being

paid based on the actual hours worked ("Book Rate Technicians").  Section 7(I) of the FLSA

permits employers to pay employees on this type of book rate basis "if (1) the regular rate of pay

of such employee is in excess of one and one-half times [the minimum wage in section 6 of the

---

Clearly, however, the information obtained from the employees was within the scope of their
employment and is not hearsay, and the motion to strike will be denied.   In any event, the DOL
has submitted nine employee declarations, all of which support the minimum wage and overtime
violations, as well as the DOL's back wage calculations.  Additionally, the DOL has submitted
the declarations from the Wage and Hour Personnel involved in the 2005 investigation and the
2012 conciliation.

Act] and (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or services." 29 U.S.C. § 207(I); *see also* Wage and Hour's FIELD OPERATIONS HANDBOOK ¶ 21(h) (available at https://www.dol.gov/whd /FOH/FOH_Ch21.pdf.). Five M's has "no idea" whether anyone at the company is responsible for ensuring compliance with the FLSA, and no one at the three businesses verified that Book Rate Technicians earned at least the Federal minimum wage.

Wage and Hour investigated Five M's pay practices with respect to the Book Rate Technicians on a workweek-by-workweek basis. If the regular rate of a Book Rate Technician was more than one and one-half times the minimum wage ($10.88 per hour), then no back wages were due. (*See* 29 U.S.C. § 207(I)). If the regular rate of a Book Rate Technician were less than $10.88 per hour, then the employee was entitled to minimum wage and overtime. In order to determine whether the employee was paid minimum wage and overtime, for each workweek Wage and Hour took the Book Rate Technicians' gross pay from Five M's payroll records and divided that number by the 50-hour workweek to determine the regular rate. If that rate were less than $7.25, the difference between $7.25 and the regular rate was multiplied by 50 hours. The record shows that, in certain workweeks, four of the Book Rate Technicians' regular hourly rates were less than $7.25 per hour for the first 40 hours of work in a workweek, resulting in minimum wage violations totaling $1,293.50. Therefore, Five M's owes six employees $1,676.83 in unpaid minimum wage as a result of these violations.

Five M's attempts to show FLSA compliance by submitting Neal Guidarelli's Affidavit. The DOL has filed a motion to strike portions of the Guidarelli Affidavit relating to hours worked. The court will now turn to that motion to strike.

The DOL requests that this Court strike the portions of the Guidarelli Affidavit relating to hours worked by employees of Five M's because they are not based on Mr. Guidarelli's personal knowledge of the hours worked by Five M's employees, and they are not based on records of hours worked by Five M's employees. In fact, based on the limited number of time cards provided to the DOL, Five M's records of hours worked directly refute Mr. Guidarelli's statements and demonstrate that he is not competent to testify about the hours worked by Five M's employees.

The DOL further requests that this Court strike all portions of Defendant's "Statement of Genuine Disputes" based on these portions of the Guidarelli Affidavit. This motion seeks "to assist the court in identifying those specific, material admissibility issues that must be resolved before the merits of the motion for summary judgment can be addressed." *Whipple v. Taylor Univ., Inc.*, 162 F. Supp. 3d 815 (N.D. Ind. 2016) (emphasis in original). The court notes here that Five M's has declined to file a response to the motion to strike.

Federal Rule of Civil Procedure 56(c) provides the following:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. 56(c)(4). Under Federal Rule of Civil Procedure 56(c)(4), "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to

testify on the matters stated." FED. R. CIV. P. 56(c)(4). Under Federal Rule of Evidence 602, "A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." FED. R. EVID. 602. "[T]o survive summary judgment, the nonmoving party must present evidence sufficient to establish a triable issue of fact on all essential elements of its case." *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 702 (7th Cir. 2009) (citing *Celotex Corp.*, 477 U.S. at 322–23 (1986)). "To defeat a summary judgment motion . . . a party may rely only on admissible evidence." *Id.* (citing *Schindler v. Seiler*, 474 F.3d 1008, 1010 (7th Cir.2007); *Stinnett v. Iron Works Gym/Executive Health Spa, Inc.*, 301 F.3d 610, 613 (7th Cir.2002); *Smith v. City of Chi.*, 242 F.3d 737, 741 (7th Cir.2001)). *See also Medina v. City of E. Chicago, Indiana*, 184 F. Supp. 2d 805, 814 (N.D. Ind. 2001) ("The Seventh Circuit is clear on the following point; summary judgment may not be defeated by evidence that is not admissible at trial.") (citing *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir.1996)).

The DOL argues that the Guidarelli Affidavit is not based on personal knowledge of hours worked.  The central issue in this case is whether Five M's employees were paid in accordance with the requirements of the FLSA. The DOL alleges that Five M's did not pay minimum wage and overtime as a result of three different practices: (1) paying certain employees a salary that did not equal at least the minimum wage ($7.25 per hour) for hours up to 40 in a workweek or that did not equal at least one and one half times the regular rate for hours worked in excess of 40 in a workweek when all hours worked are taken into account; (2) paying certain employees the same hourly rate for all hours worked without the overtime premium for the overtime hours; and (3) paying certain auto technicians using the "book rate" system ("Book

Rate Technicians") in which they were paid based on the amount of time it should take an average mechanic to perform a specific task instead of being paid based on the actual hours worked.

This central issue of whether Five M's employees were paid as required by the FLSA turns on the number of hours actually worked by employees. The DOL alleges that Valparaiso Transmission employees worked approximately 50 hours per week Monday through Saturday; Five M's alleges that Valparaiso Transmission employees could only work up to 44 hours per week with a one-hour lunch each day. Guidarelli Aff., ¶ 11. The DOL alleges that L & W Auto Salvage employees worked approximately 47 hours per week; Five M's agrees that L & W Auto Salvage employees could work up to 47 hours per week. *Id.* ¶ 10.

Employees at Valparaiso Transmission and L & W Auto Salvage kept track of their hours worked using time cards; however, Five M's maintained time cards for an unknown time after the hours were reported to Paycor, "[a]nd then after a while, [Five M's] would probably dispose of them." During the investigation and the course of discovery, Five M's were only able to produce copies of 22 time cards to the DOL. Mr. Guidarelli stated to Wage and Hour Investigator Nancy Alcantara that he believed time cards could be disposed of after the hours of work were called into the payroll service. (Id., ¶ 35). Book Rate Technicians also kept track of their actual hours worked, but these records were retained by Five M's for no more than six weeks in order to track productivity. (Id., ¶ 36). Thus, there are only two ways to determine the number of hours employees actually worked – from the testimony of the employees or from records documenting hours worked, which were not retained. None of these time records were attached to Five M's Response because Five M's did not maintain them.

Mr. Guidarelli is the manager of Valparaiso Transmission and the payroll manager for the three businesses. Mr. Guidarelli makes detailed statements regarding the number of hours worked by the employees on whose behalf the DOL is seeking back wages and liquidated damages. *See* Guidarelli Affidavit, ¶¶ 14, 16–34, and 36–46. However, these detailed statements regarding the number of hours worked are based not on Mr. Guidarelli' s personal knowledge, which would be admissible, but on a review of payroll records: "My statements regarding individual employee compensation below is based on my personal knowledge of employee work history, my personal knowledge of the day-to-day business operations of the Five M's businesses, and a review of our payroll records." Id. ¶ 13. Mr. Guidarelli' s personal knowledge of "employee work history" and "the day-to-day business operations of the Five M's' business" is not a sufficient foundation for his detailed testimony regarding the number of hours worked by 30 employees over a two-year period more than two years ago, many of whom only worked a few weeks or months. *See, e.g.* Decl. of Thomas Bade, ¶ 13; Decl. of Dan Gresham, ¶ 10. Mr. Guidarelli' s testimony regarding the number of hours worked is hearsay, and will be stricken.

The DOL next argues that for the overwhelming majority of employees, the payroll records Mr. Guidarelli bases his statements about hours worked do not contain actual hours worked.  Five M's  payroll records are not attached to the Guidarelli Affidavit, nor were they filed in Defendant's Response. The DOL obtained weekly payroll journals for the time covered by the investigation. However, with relatively few exceptions, these weekly payroll journals only contain records of hours "booked" by Book Rate Technicians, not the hours that they actually worked. With the exception of "total hours" for one week for each of the following employees – Robert Aubin, Nadine Walter, and Jeff Wells – and 13 weeks for Marcus Rogers, Five M's

weekly payroll journals do not state the hours actually worked by Five M's' employees. They only reflect the book rate hours earned – not actual hours worked and not work performed at L & W Auto Salvage that was not associated with a "booked" job – by Book Rate Technicians. Moreover, there is no indication that the "total hours" recorded on the weekly payroll journals recorded for Mr. Aubin, Ms. Walter, Mr. Wells, or Mr. Rogers, accurately reflect the hours these employees actually worked.

Rather, Five M's is simply using the salary and total amounts paid to their employees to back into a calculation of how much time it now claims employees worked. Clearly, Mr. Guidarelli does not have personal knowledge of the hours worked by all of the employees included in his Affidavit, and with the exception of 22 time cards, Five M's has no records of hours worked. For instance, Mr. Guidarelli states:

> [James] Wilhelm was paid $420 per week based on 47 hours per week. This is equivalent to $8.32 per hour for 40 hours and $12.48 for overtime. In the workweek ending October 26, 2013, Mr. Wilhelm was paid $210.00, because he only worked 23.5 hours, or half the workweek. In the workweek ending November 2, 2013, Mr. Wilhelm was paid $105.00, because he only worked 11.75 hours, or one-fourth of the workweek.

Guidarelli Aff., ¶ 14. Five M's have no records of these actual hours worked, it simply reverse engineered Mr. Wilhelm's hours worked by dividing the amount paid based on the payroll records by his weekly salary and multiplying the product by 47 hours: ($210/$420) x 47 hours = 23.5 hours (workweek ending October 26, 2013); ($105/$420) x 47 hours = 11.75 hours (workweek ending November 2, 2013). If Five M's had actually paid the "equivalent" of $8.32 per hour for the first 40 hours in a workweek to Mr. Wilhelm, he would have been paid $97.76 (not $105) for the workweek ending October 26, 2013 ($8.32 x 11.75 hours), and he would have

been paid $195.52 (not $210) for the workweek ending November 2, 2013 ($8.32 x 23.5 hours). Mr. Guidarelli's review of payroll records simply allowed him to reverse engineer hours worked based on amounts paid; his review did not allow him to verify actual hours worked. For this additional reason, Mr. Guidarelli' s testimony regarding the number of hours worked is hearsay.

The DOL notes that Mr. Guidarelli now claims that Thomas Bade, a Book Rate Technician who was paid with a bounced check, was reimbursed. Guidarelli Aff., ¶ 15. This directly contradicts the testimony he gave during Defendants' 30(b)(6) deposition, and it will be stricken. As a 30(b)(6) designee, Mr. Guidarelli had a duty to be prepared with complete answers about the NSF check. During Defendants' 30(b)(6) deposition, Mr. Guidarelli, who was designated to testify about the NSF check, testified that he did not recall reimbursing Mr. Bade for the bounced check. SJ Ex. F [Doc. 25-8] at 8:17-9:4. Mr. Guidarelli also testified that he did not remember whether he handled this issue or if Mr. Morgavan handled it. *Id*. at 9:13-20. When asked to explain everything that he knew about how the issue regarding the NSF check to Mr. Bade was resolved, Mr. Guidarelli responded, "That I don't know." *Id*. at 10:2-5.

In the Guidarelli Affidavit, Mr. Guidarelli now asserts the following: "On August 16, 2013, Mr. Bade was paid $111.83 with a not sufficient funds ('NSF') check. Mr. Bade was reimbursed the amount of the NSF check plus the costs of the bank fees." Guidarelli Aff., ¶ 15. Five M's did not file any evidence other than the Guidarelli Affidavit to show that Mr. Bade was reimbursed. Because this statement directly contradicts Mr. Guidarelli's previous testimony at the 30(b)(6) deposition, it will be stricken.

The DOL further asserts that Mr. Guidarelli's statements about hours worked by Myles Ramirez and Brett Lewandowski are contradicted by Five M's time cards. Although Five M's

15

only produced copies of 22 time cards for dozens of employees over a two-year period, three of

those time cards directly refute Mr. Guidarelli's statements regarding hours worked,

demonstrating that he is not competent to testify about the hours worked by Five M's employees.

Mr. Guidarelli states the following with respect to the hours worked by Salaried Detailer Myles

Ramirez:

> Myles Ramirez worked at Valparaiso Transmission. He was paid
> $400.00 per week if he worked 44 hours. This is equivalent to
> $9.78 per hour for the first forty hours and $14.67 per overtime
> hour. For the workweek ending 7/19/2014, Mr. Ramirez was paid
> $375.00 for 38.3 hours of work. In the weeks ending 7/26/2014,
> 8/2/2014, 8/9/2014, and 8/16/2014, Mr. Ramirez was paid $450.00
> for 44 hours worked.

Guidarelli Aff., ¶ 29. For the workweek ending July 19, 2014, Mr. Ramirez's time card shows

that he worked a total of 43 hours, not 38.3 hours as Mr. Guidarelli claims. The DOL notes that

Mr. Ramirez only worked five days that week, instead of his usual six days. For the workweek

ending July 26, 2014, Mr. Ramirez's time card shows that he worked a total 46.3 hours, not 44

hours as Mr. Guidarelli claims. These two specific time cards not only refute Mr. Guidarelli's

testimony about the actual hours Mr. Ramirez worked, they also undermine Five M's position

that no one at Valparaiso Transmission worked longer than the business' operating hours. On

Saturday, July 19, 2014, Mr. Ramirez clocked out at 4:15 pm, not at noon when Valparaiso

Transmission allegedly shut down. On July 26, 2014, Mr. Ramirez clocked out at 1:48 pm.

Mr. Guidarelli states the following with respect to the hours worked by Salaried Detailer

Brett Lewandowski:

> Brett Lewandowski worked at Valparaiso Transmission. He was paid
> $475.00 per week if he worked 44 hours. This is equivalent to $10.33

> per hour for the first forty hours and $15.49 per overtime hour. During the workweeks ending 7/26/2014, 8/2/2014, and 8/9/2014, Mr. Lewandowski was paid $425.00 and he worked 40.7 hours. In the workweeks ending 8/16/2014, 8/23/2014, and 8/30/2014, Mr. Lewandowski was paid $475.00 each week and worked 47 hours each week.

Guidarelli Aff., ¶ 28. For the workweek ending July 26, 2014, Mr. Lewandowski's time card shows that he worked a total of 48.3 hours, not 40.7 hours as Mr. Guidarelli claims. Like Mr. Ramirez, this time card also shows that Mr. Lewandowski worked past noon on Saturday – he did not clock until 2:02 pm.

The DOL has clearly shown that the employees' time cards directly contradict paragraphs 29 and 30 of the Guidarelli Affidavit. Accordingly, this Court will strike all of Mr. Guidarelli's statements regarding hours worked because he is not competent to testify about this matter.

Because paragraphs 14, 16–34, and 36–46 of the Guidarelli Affidavit are hearsay and not based on Mr. Guidarelli's personal knowledge and are not based on any records of actual hours worked submitted to the DOL or this Court (and paragraphs 29 and 30 are directly contradicted by employees' time cards), this Court will strike these paragraphs from the Guidarelli Affidavit. Because paragraph 15 of the Guidarelli Affidavit contradicts Mr. Guidarelli's 30(b)(6) deposition testimony, this Court will also strike paragraph 15 from the Guidarelli Affidavit. Likewise, the Court will strike all portions of Five M's "Statement of Genuine Disputes" in their Defendants' Response to the DOL's Motion for Summary Judgment [Doc. 27] that were based on these paragraphs from the Guidarelli Affidavit.

Going back to the motion for summary judgment, the DOL argues that Five M's failed to pay the overtime premium for hours in excess of 40 hours in a workweek, in certain workweeks.

Employers are prohibited from employing non-exempt employees for more than 40 hours in a workweek, unless such employees are compensated for their employment in excess of 40 "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a). The current investigation also revealed numerous overtime violations as a result of Five M's practices of paying employees their regular rates for all hours worked and failing to ensure that Book Rate Technicians earned the half-time premium for actual hours worked in excess of 40 in a workweek.

As explained above, Wage and Hour investigated Five M's pay practices with respect to the Book Rate Technicians on a workweek-by-workweek basis. If the regular rate (obtained from Five M's payroll records) of a Book Rate Technician was more than one and one-half times the minimum wage ($10.88 per hour), then no back wages were due. (See 29 U.S.C. § 207(I)). If the regular rate of a Book Rate Technician were less than $10.88 per hour, then the employee was entitled to minimum wage and overtime. In some workweeks, four of the Book Rate Technicians' earnings fell below $10.88 per hour; therefore, the Five M's did not meet the 7(I) exemption in those workweeks. If the regular rate of a Book Rate Technician was less than the minimum wage, then Wage and Hour used the minimum wage to calculate unpaid overtime ($7.25 multiplied 0.5 multiplied by 10 overtime hours). If the regular rate of a Book Rate Technician was more than the minimum wage but less than $10.88 per hour, Wage and Hour used the Book Rate Technician's regular rate to calculate unpaid overtime. They are due a total of $1,266.24 in unpaid overtime compensation.

Five M's payroll records reflect that ten hourly detailers at Valparaiso Transmission were paid their regular rates for all hours worked, including hours worked in excess of 40 in a

workweek, without the overtime premium. This resulted in overtime violations because Five M's did not pay any extra wages for hours worked beyond 40 in a workweek. They are due a total of $4,770.99 in unpaid overtime compensation.

Five M's payroll records reflect that six salaried detailers at Valparaiso Transmission were paid their regular rates for all hours worked, including hours worked in excess of 40 in a workweek, without the overtime premium. This resulted in overtime violations because Five M's did not pay any extra wages for hours worked beyond 40 in a workweek. They are due a total of $1,012.91 in unpaid overtime compensation.

Five M's' payroll records reflect that three hourly Parts Pullers at L & W Auto Salvage were paid their regular rates for all hours worked, including hours worked in excess of 40 in a workweek, without the overtime premium. This resulted in overtime violations because Five M's did not pay any extra wages for hours worked beyond 40 in a workweek. They are due a total of $3,861.99 in unpaid overtime compensation.

Five M's payroll records reflect that eleven salaried Parts Pullers at L & W Auto Salvage were paid their regular rates for all hours worked, including hours worked in excess of 40 in a workweek, without the overtime premium. This resulted in overtime violations because Five M's did not pay any extra wages for hours worked beyond 40 in a workweek. They are due a total of $1,888.10 in unpaid overtime compensation.

Therefore, taken all together, Five M's owe 35 employees a total of $12,800.23 in unpaid overtime compensation.

Next, the DOL argues that it is entitled to recover an additional amount equal to the amount of unpaid compensation, as liquidated damages. Liquidated damages in an equal to the

amount of back wages due employees is an appropriate remedy under section 16(c) of the Act. 29 U.S.C. § 216(c). Under the FLSA, "[d]ouble damages are the norm, single damages the exception." *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 310 (7th Cir. 1986). The FLSA makes liquidated damages mandatory, unless an employer proves it acted in good faith and reasonable belief. *Shea v. Galaxie Lumber & Constr. Co.*, 152 F.3d 729, 733 (7th Cir. 1998). The Portal-to-Portal Act provides an affirmative defense to liquidated damages for employers who acted in good faith and had reasonable grounds to believe the conduct did not violate the FLSA. 29 U.S.C. § 260.

"The employer bears a substantial burden in showing that it acted reasonably and with good faith." *Bankston v. State of Ill.*, 60 F.3d 1249, 1254 (7th Cir. 1995) (citing *Kinney v. District of Columbia*, 994 F.2d 6, 12 (D.C.Cir.1993)). In order to establish a good faith defense, the employer must affirmatively demonstrate "an honest intention to ascertain and follow the dictates of the Act." *Brock v. Claridge Hotel and Casino*, 846 F.2d 180, 187 (3rd Cir. 1988). In the present case, Five M's has produced no evidence that its conduct resulting in FLSA violations was in good faith and reasonable. Furthermore, Five M's violations were willful, as discussed below, and willful violations establish the lack of a good faith reasonable belief defense. *See Elwell v. Univ. Hosps. Home Care Servs.*, 276 F.3d 832, 842 (6th Cir. 2002) ("[A] jury verdict finding that the employer acted willfully forecloses the possibility of finding that the employer acted in good faith . . . .") (citing *Herman v. Palo Group Foster Home*, 183 F.3d 468, 474 (6th Cir. 1999). Therefore, liquidated damages are appropriate.

As noted above, The DOL contends that Five M's violations were willful. The statute of limitations to collect FLSA back wages is three years when the violations are willful. *See* 29

U.S.C. § 255(a); *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 129-30 (1988). In *Richland Shoe Co.*, the Supreme Court laid out the willfulness standard under the FLSA. The Court held that an employer who either knew or showed reckless disregard as to whether its conduct was prohibited by the FLSA has committed a willful violation. 486 U.S. at 133. Courts have recognized willful violations where, as here, prior investigations disclosed similar violations. *See Reich v. Tiller Helicopter Services, Inc.*, 8 F.3d 1018, 1036 (5th Cir. 1993); *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 967 (6th Cir. 1991).

Five M's has failed to comply with Wage and Hour's directives and has a history of violations from previous Wage and Hour investigations, which put it on notice of the FLSA's requirements.  Mr. Morgavan was specifically advised about the FLSA's overtime requirements and the FLSA § 7(I) overtime exemption requirements, and Mr. Morgavan agreed to comply with the FLSA.  Not only did two Wage and Hour representatives provide specific guidance on FLSA compliance, but also gave numerous Wage and Hour compliance publications relating to the FLSA in 2005 and 2012.  Furthermore, because Five M's committed minimum wage, overtime, and recordkeeping violations in the 2005 investigation, in the same manner as in this investigation, Five M's were on notice that the their practices violated the FLSA.  Minimum wage violations were found in all three instances, resulting from the employer's failure to pay final paychecks to certain employees. Clearly the DOL has shown that Five M's acted willfully in committing the minimum wage, overtime, and recordkeeping violations.

Finally, the DOL argues that Five M's should be enjoined from prospectively violating the FLSA. District courts may enjoin violations of the pay provisions of the Act, pursuant to section 17 of the FLSA. 29 U.S.C. § 217. The Seventh Circuit has long held that an injunction

should issue upon proof of FLSA violations, where no recognized mitigating factors appear or are represented. *Walling v. Nat'l Ice and Fuel Corp.*, 158 F.2d 28 (7th Cir. 1946). "'In exercising its discretion, the court must give substantial weight to the fact that the Secretary seeks to vindicate a public, and not a private right.'" *Martin v. Funtime, Inc.*, 963 F.2d 110, 113 (6th Cir. 1992) (citing *Brock v. Big Bear Market No. 3*, 825 F.2d 1381, 1383 (9th Cir. 1987) (quoting *Marshall v. Chala Enterprises, Inc.*, 645 F.2d. 799, 804) (9th Cir. 1981))). "Where . . . the Department has established violations of the statute and there are insufficient assurances that Five M's will comply with the FLSA in the future, an injunction is appropriate." *Int'l Detective & Protective Serv., Ltd.*, 819 F. Supp. 2d at 754 (N.D. Ill. 2011) (citations omitted).

During the previous FLSA investigation in 2005, the FLSA conciliation in 2012, and the present FLSA investigation, Mr. Morgavan represented Five M's and was provided numerous publications on compliance with the FLSA. Despite this, Five M's continued to fail to pay its employees in compliance with the FLSA and keep the basic employment records required by the FLSA. Mitigating factors are not present and,  therefore, an injunction is an appropriate remedy to ensure future compliance with the FLSA.

## Conclusion

On the basis of the foregoing, the DOL's motion for summary judgment [[DE 24] is hereby GRANTED.

Specifically, the Court enters judgment against the Defendants for violating the minimum wage, overtime, and recordkeeping requirements of the FLSA.  The Defendants are jointly and severally liable for uncompensated minimum wage and overtime, as well as liquidated damages,

totaling $28,954.12[2] for the time period from June 30,2012, through September 20, 2014.

Further, the court enters judgment enjoining and restraining Defendants from violating said provisions of the FLSA.

Further, Five M's motion to strike portions of the declaration of Nancy Alcantara [DE 26] is hereby DENIED and the DOL's motion to strike portions of the affidavit of Neal Guidarelli [DE 28] is hereby GRANTED.

Entered: March 1, 2017.

s/ William C.  Lee
William C. Lee, Judge
United States District Court

---

[2] This represents $14,477.06 in liquidated damages and $14,477.06 in unpaid minimum wages and unpaid overtime, as follows:

  Wilhelm - $315.61 unpaid minimum wage
  Bade - $67.72 unpaid minimum wage
  Four Book Rate Technicians - $1,293.50 unpaid minimum wage
 Total unpaid minimum wages - $1,676.83
--------------------------------------------------------------------------------------
  Four Book Rate Technicians - $1,266.24 unpaid overtime
  Ten Hourly Detailers - $4,770.99 unpaid overtime
  Six Salaried Detailers - $1,012.91 unpaid overtime
  Three Hourly Parts Pullers - $3,861.99 unpaid overtime
  Eleven Salaried Parts Pullers - $1,888.10 unpaid overtime
 Total unpaid overtime - $12,800.23